UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL KOCIK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 03 C 7137 |
| | ) |
| USF HOLLAND, INC. | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

Defendant USF Holland, Inc., a regional trucking company, employed Plaintiff Michael Kocik as an Operations Manager at its terminal in McCook, Illinois. In February and March 2001, Plaintiff injured his back, went on disability leave, and filed a workers' compensation claim. In November 2001, while Plaintiff was still on leave, Defendant sent Plaintiff a layoff notice. Plaintiff makes two claims: first, that he was terminated in retaliation for filing the workers' compensation claim; second, that the layoff violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Defendant moves for summary judgment on both claims, arguing that Plaintiff's layoff was unrelated to the filing of the workers' compensation claim, and that Plaintiff's ADEA claim fails because there is no evidence that a similarly situated younger worker was treated more favorably. For the reasons discussed below, the court grants summary judgment in favor of Defendant on both counts.

## FACTS

The following facts are drawn from the parties' Local Rule 56.1 statements, as well as pertinent documents attached thereto.[1]

Defendant USF Holland, a regional trucking company, hired Plaintiff Michael Kocik as a Supervisor at its terminal in McCook, Illinois on March 13, 1991. (Defendant's Statement of Material Facts (hereinafter, "Def.'s 56.1") ¶¶ 2, 3.) In January 1999, according to Defendant, Plaintiff was promoted to the position of Operations Manager. (Def.'s 56.1 ¶ 5.) Defendant contends that Supervisors report to Operations Managers, who in turn report to the Terminal Manager. (Def.'s 56.1 ¶ 4, 6.) As of January 1999, there were two other Operations Managers, Dennis Byczek and Denis Brosnan. (Plaintiff's Response to Defendant's Statement of Material Facts (hereinafter, "Pl.'s 56.1") ¶ 7.) It is undisputed that both Byczek, born on August 14, 1953, and Brosnan, born on November 24, 1954, were older than Plaintiff, who was born on December 10, 1957, and that both Byczek and Brosnan had greater seniority than Plaintiff. (Pl.'s 56.1 ¶¶ 1, 8-10; VandeVusse Aff. ¶ 6, Ex. B to Def.'s 56.1.)

Plaintiff denies being promoted to Operations Manager (Pl.'s 56.1 ¶ 5), and insists he was merely a Supervisor. (Pl.'s 56.1 ¶ 23.) Plaintiff also disputes Defendant's characterization of the

---

[1] The court notes that Plaintiff failed to comply with the requirements of Local Rule 56.1. Under Local Rule 56.1(3)(A), the opposing party must support its denials of the facts set forth by the moving party with specific references to the record. Plaintiff neglected to cite to the record for several of his denials, and other citations are to documents that make no reference to the subject matter of the denials. A denial which fails to cite to any supporting materials in the record may be deemed an admission. *See Jupiter Aluminum v. Home Ins. Co.*, 225 F.3d 868, 870 (7th Cir. 2000) ("[a Rule 56.1] answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission"). The court has reviewed the record, however, and where Plaintiff's denials are supported, albeit without citation, the court will proceed as if the denial were properly cited.

2

positions; he contends that the position of Supervisor and that of Operations Manager are identical, and that Supervisors and Operations Managers both report to the Terminal Manager. (Pl.'s 56.1 ¶¶ 4, 6.) In his deposition testimony, however, Plaintiff admitted several times that he had held the position of Operations Manager (Kocik Dep., at 16:17-19:14), and that in January 1999 he received a raise of $100 a week. (Kocik Dep., at 21:5.)

In February 2001, Plaintiff suffered a work-related back injury and went on disability leave. (Pl.'s 56.1 ¶ 11; Kocik Dep., at 35:21-36:3.) In March 2001, he filed a workers' compensation claim.[2] (Pl.'s 56.1 ¶¶ 11-12.) In May 2001, a dispute arose as to whether Plaintiff was healthy enough to return to work. In a May 2 letter, Patrick Cassidy, the Terminal Manager for the McCook terminal, advised Plaintiff that an independent medical examination had determined that he was able to return to work.[3] (Letter from Cassidy to Kocik of 5/2/01, Tab F to Pl.'s 56.1.) Cassidy's letter directed Plaintiff to return to work by May 7, 2001, or USF Holland would assume that Plaintiff had "abandoned [his] employment." (Id.) When Plaintiff did not return, Cassidy sent another letter, dated May 22, 2001, stating that USF Holland considered Plaintiff to have "voluntarily resigned" as of May 7. (Letter from Cassidy to Kocik of 5/22/01, Tab E to Pl.'s 56.1.) In June 2001, however, Defendant "reinstated" Plaintiff as an "active USF Holland employee" on disability leave. (Letter from Cassidy to Kocik of 6/7/01, Ex. 8 to Defendant's Reply Brief Supporting its Motion for Summary

---

[2] The workers' compensation claim has settled. (Kocik Dep., at 35:16.)

[3] The record does not reveal when this independent medical examination occurred, or why it was ordered.

3

Judgment.) A June 7 letter from Cassidy confirmed that Plaintiff had submitted new and sufficient medical documentation, including a physician's statement, to support his continued absence.[4] (*Id.*)

In October 2001, Plaintiff apparently submitted a form from his doctor releasing him for "light duty" work of no more than four hours a day. (Letter from Cassidy to Kocik of 10/18/01, Ex. 4 to Defendant's Reply Brief Supporting its Motion for Summary Judgment.) In a letter dated October 18, Cassidy advised Plaintiff that USF Holland had no four-hour-a-day positions available, and thus would not consider recalling him until the doctor's restrictions were lifted. (*Id.*) On Thursday, October 25, Plaintiff and Cassidy had a phone conversation. (Kocik Dep., at 40:3-41:12.) The parties disagree about who initiated the call, but it is undisputed that Plaintiff told Cassidy that Plaintiff expected his doctor to clear him for full-time work the following Monday, and that Plaintiff wanted to come back that day. (Kocik Dep., at 40:16-20.) Plaintiff claims that Cassidy replied, "No, you will not be back. You won't ever be back" and then hung up. (Kocik Dep., at 40:21-41:12.) According to a letter Cassidy wrote the following day to confirm the conversation, it was Plaintiff who hung up. (Letter from Cassidy to Kocik of 10/26/01, Tab D to Pl.'s 56.1.) Cassidy's letter also advised Plaintiff that Defendant would not consider recalling Plaintiff until it had actually received a medical release for full duty. (*Id.*)

On November 15th, 2001, Cassidy sent a letter captioned "layoff letter" to Plaintiff via certified mail, stating "Dear Mr. Kocik: Please be advised that effective October 29, 2001 you are hereby on layoff status due to business and economic conditions." (Letter from Cassidy to Kocik of 11/15/01, Ex. 6 to Defendant's Reply Brief Supporting its Motion for Summary Judgment.) Plaintiff

---

[4] Neither party has offered the physician's statement referred to in the letter, nor any medical documentation related to Plaintiff's injury or disability leave.

characterizes this letter as a termination notice (Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment (hereinafter "Pl.'s Response"), at 2), while Defendant contends that Plaintiff was merely on layoff status, not terminated, and that Plaintiff retained his seniority. (Def.'s 56.1 ¶ 19.) In any case, it is undisputed that in July 2002, Defendant recalled Plaintiff to work to replace a retiring Operations Manager, and that he remains employed by Defendant. (Def.'s 56.1 ¶ 21; Kocik Dep., at 33:14.)

The parties also dispute Defendant's reasons for sending the layoff letter. Defendant argues that its business declined after the terrorist attacks of September 11, 2001, necessitating layoffs of a number of employees from various job classifications. (Def.'s 56.1 ¶¶ 13, 15.) Defendant has submitted the affidavit of its Director of Human Resources listing fifteen employees, other than Plaintiff, who were laid off at the McCook terminal in September and October 2001. (VandeVusse Supplemental Aff. ¶ 2, App. to Defendant's Reply Brief Supporting its Motion for Summary Judgment.) As part of the McCook layoffs, Defendant claims that it decided to lay off one of the three Operations Managers (Def.'s 56.1 ¶ 16), and that of the three, Plaintiff had the least seniority. (Def.'s 56.1 ¶ 17.)[5] As noted, it is undisputed that Byczek and Brosnan, the other two Operations Managers, were older than Plaintiff and had worked for Defendant longer than he had. (Pl.'s 56.1 ¶¶ 9-10.) Another affidavit from the Director of Human Resources cites as reasons for Plaintiff's layoff the decline in business conditions and Plaintiff's lack of seniority compared to the other Operations managers. (VandeVusse Aff. ¶ 6, Ex. B to Def.'s 56.1.) Defendant maintains that it did not hire any Supervisors or Operations Managers during the eight-month period when Plaintiff was

---

[5] The record does not reveal who was the actual decision-maker in the layoff process.

laid off. (Def.'s 56.1 ¶ 20.) It is undisputed that as of June 25, 2004, Defendant still had not hired a third Operations Manager. (Pl.'s 56.1 ¶ 22; VandeVusse Aff. ¶ 8, Ex. B to Def.'s 56.1.)

Plaintiff disputes that there was any decline in Defendant's business after September 11, 2001. (Pl.'s 56.1 ¶ 13.) He claims that Defendant was "busy" and that Defendant was advertising for more supervisors on the Internet. (*Id.*) In support of this contention, however, Plaintiff offers no evidence other than an assertion that "people at the terminal called him and said they were busy." (Pl.'s 56.1 ¶ 14.)

Plaintiff claims that the real reasons for the layoff, or termination, as he calls it, were his filing of the workers' compensation claim and his age. (Pl.'s 56.1 ¶ 24.) To counter the fact that he was actually younger than the other two Operations Managers, Byczek and Brosnan, he contends that he was not actually an Operations Manager, but a Supervisor, or that the positions of Supervisor and Operations Manager were identical. (Pl.'s 56.1 ¶ 4.) As a Supervisor, Plaintiff contends, he was either the oldest (Pl.'s 56.1 ¶ 23), or the fourth oldest. (Pl.'s Response, at 1-2.) He offers no evidence of the ages of other Supervisors at USF Holland for comparison, however.

## DISCUSSION

I. Standard of Review

Defendant moves for summary judgment on Plaintiff's claims. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All evidence and inferences must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986). The nonmoving party must set forth specific facts showing that there is a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law. *Id.* at 252. The nonmoving party must support its contentions with admissible evidence and may not rest upon the mere allegations in the pleadings or conclusory statements in affidavits. *Celotex*, 477 U.S. at 324.

Plaintiff brings two counts against Defendant: Count I alleges that Defendant wrongfully discharged Plaintiff in retaliation for Plaintiff's filing of a workers' compensation claim (Complaint ¶ 13); Count II alleges that Defendant discriminated against Plaintiff in violation of the ADEA. (Complaint ¶¶ 17-21.) The court addresses each claim in turn.

## II. Retaliatory Discharge

Plaintiff contends that Defendant terminated him in retaliation for filing a workers' compensation claim for his back injury. Under Illinois law, an employer is prohibited from discharging an employee for exercising rights guaranteed by the Illinois Workers' Compensation Act. *See* 820 ILL. COMP. STAT. 305/4(h). Illinois courts recognize a cause of action for retaliatory discharge for employees who are terminated for exercising their workers' compensation rights, including the filing of a claim. *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 181-82, 384 N.E.2d 353, 356 (1978). To succeed, an employee-plaintiff must show that (1) he was an employee before the injury; (2) he exercised a right granted by the Workers' Compensation Act; and (3) his discharge was causally related to his having filing a claim under the Workers' Compensation Act. *Borcky v. Maytag Corp.*, 248 F.3d 691, 695 (7th Cir. 2001). Here, only the third element, the causation element, is in dispute.

Defendant argues at the outset that Plaintiff cannot make out a prima facie case for retaliatory discharge because Plaintiff was never actually discharged. (Defendant's Memorandum

7

in Support of its Motion for Summary Judgment (hereinafter "Def.'s Motion"), at 4.) Citing *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29, 44, 445 N.E.2d 877, 884 (1994), Defendant argues that in Illinois, nothing short of actual termination of employment constitutes a "discharge" for purposes of a retaliatory discharge claim under the Workers' Compensation Act. (Def.'s Motion, at 4.) Defendant then argues that since Plaintiff was merely laid off, rather than terminated, he was never "discharged."

Illinois courts do appear to require actual termination of employment to support a retaliatory discharge claim. *See Graham v. Commonwealth Edison Co.*, 318 Ill. App. 3d 736, 742, 742 N.E.2d 858, 864 (1st Dist. 2000) ("The tort of retaliatory discharge does not encompass any behavior other than actual termination of employment"). As the Illinois Supreme Court has observed, however, the determination of whether an employee has actually been terminated does not depend on what label the employer attaches to a job action. *Hinthorn v. Roland's of Bloomington, Inc.*, 119 Ill. 2d 526, 519 N.E.2d 909 (1988). In *Hinthorn*, the Court stated:

> There are no magic words required to discharge an employee: an employer cannot escape responsibility for an improper discharge simply because he never uttered the words "you're fired." So long as the employer's message that the employee has been involuntarily terminated is clearly and unequivocally communicated to the employee, there has been an actual discharge, regardless of the form such discharge takes.

*Id.* at 531, 519 N.E.2d at 912. In any event, this court need not decide under what circumstances a layoff may constitute a discharge for purposes of a retaliatory discharge claim. Even if the letter of November 15, 2001 qualifies as a termination of Plaintiff's employment, Plaintiff's claim fails because he cannot establish his filing of the workers' compensation claim played any role in the issuance of the November 15 layoff notice.

8

When assessing a retaliatory discharge claim, Illinois courts do not require that the employer offer evidence of its reason for discharging the employee. *Clemons v. Mech. Devices Co.*, 184 Ill. 2d 328, 335, 704 N.E.2d 406, 407-08 (1998). Instead, the employee bears the burden of proving all the elements of the cause of action, including a causal link between the protected activity and the discharge. *Borcky*, 248 F.3d at 696 n.5. Our Court of Appeals has recently explained that where an Illinois retaliatory discharge claim is brought in federal court, the employee may proceed under the familiar burden-shifting method, under which the employer may offer a valid reason for the discharge if the employee makes out a prima facie case that the employer had an unlawful motive. *Carter v. Tennant Co.*, 383 F.3d 673, 678 (7th Cir. 2004); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Where the employer makes such a showing, the employee must demonstrate that the employer's stated reason is but a pretext. *Carter*, 383 F.3d at 678. Thus, under either the state or federal approach, the plaintiff's claim fails if he fails to rebut the employer's evidence of a valid, non-pretextual reason for the discharge.

To establish that the layoff notice was issued in retaliation for his workers' compensation claim, Plaintiff cannot rely on the mere fact that the latter event followed the former. *Bermudez v. TRC Holdings, Inc.*, 138 F.3d 1176, 1179 (7th Cir. 1998). Rather, "other circumstances must also be present which reasonably suggest that the two events are somehow related to one another." *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000). Plaintiff makes several arguments. First, he offers two affidavits, one from his attorney, and the other from a co-worker. The attorney asserts that Defendant attempted to negotiate a joint settlement of both the workers' compensation claim and the discharge claims. (Troha Aff., Tab C to Pl.'s 56.1, ¶ 3.) Whatever inference Plaintiff hopes to draw from this affidavit is moot, because such a statement is inadmissible

9

under FED. R. EVID. 408 (statements made in settlement negotiations are inadmissible in later proceedings).[6]

The affidavit of the co-worker, Kathy Redino, speculates that Plaintiff was laid off because of the workers' compensation claim.[7] (Redino Aff., Tab G to Pl.'s 56.1.) While she states her opinion of Defendant's motive, she provides no facts to support her speculation, nor any facts from which an inference could reasonably be drawn as to Defendant's motive. *See Visser v. Packer Eng. Assoc.*, 924 F.2d 655, 659 (7th Cir. 1991) (co-workers' opinions about the employer's alleged discriminatory motive, without stating any facts from which a reasonable person in their position could infer a discriminatory motive, were inadmissible as a matter of law). Mere speculation about Defendant's motives, absent such facts, must be disregarded for summary judgment purposes. *Id.* ("Discrimination law would be unmanageable if disgruntled employees—the friends of the plaintiff and often people in the same legal position as the plaintiff—could defeat summary judgment by affidavits speculating about the defendant's motives.")

Plaintiff also refers to the May 2001 letters from Cassidy to Plaintiff, in which Cassidy told Plaintiff that Plaintiff had "abandoned" his employment and "resigned." (Pl.'s Response, at 2.) In the court's view, nothing in these letters establishes a link between the workers' compensation claim and the November layoff. Both letters, written six months prior to the layoff, refer to an entirely different dispute, that of whether Plaintiff was healthy enough to return from his disability leave.

---

[6] In any event, the fact that defense counsel made an effort to resolve two pending disputes at the same time says nothing about whether the employer was motivated by the first dispute to take the action that generated the second dispute.

[7] The record contains no identification of Redino's position at USF Holland; in her affidavit, she merely describes herself as having worked "in the office" for nine years. (Redino Aff.)

10

Moreover, Plaintiff neglects to mention that in June 2001, the dispute was resolved after Plaintiff apparently submitted appropriate medical documentation, and Plaintiff was reinstated as an "active USF Holland employee" on disability leave. (Letter from Cassidy to Kocik of 6/7/01, Ex. 8 to Defendant's Reply Brief Supporting its Motion for Summary Judgment.)

Finally, Plaintiff refers to Cassidy's alleged "you won't ever be back" statement in the phone call on October 25, 2001, and Cassidy's letter confirming the conversation the following day. (Pl.'s Response, at 2.) Assuming Cassidy did make this statement in the phone call, the court notes that he did not say that Plaintiff wouldn't be back *because of the workers' compensation claim.* In fact, Plaintiff admitted that Cassidy never told him what Cassidy meant by the alleged statement, and that Plaintiff did not ask. (Kocik Dep., at 40:23-41:7). As for the October 26th letter, sent by Cassidy to confirm the conversation, it states only that USF Holland would not consider recalling Plaintiff from disability leave until Plaintiff's doctor released him from all work restrictions. (Letter from Cassidy to Kocik of 10/26/01, Tab D to Pl.'s 56.1.) The letter says nothing about a layoff or a termination. (*Id.*) The most Plaintiff can do with this evidence is to note that his November 15th layoff occurred soon after the October 25th conversation and October 26th letter, the subject of which was his return from disability leave, after the back injury for which Plaintiff had filed his workers' compensation claim.

Even if this weak inferential chain of reasoning were sufficient to constitute prima facie evidence of retaliation, Plaintiff's retaliatory discharge claim would not survive summary judgment here, where Defendant has articulated an unrelated reason for Plaintiff's layoff notice: Defendant argues that the reason for the layoff notice was that its business declined after the terrorist attacks of September 11, 2001, resulting in less work at the McCook facility, which led to layoffs of a number

11

of employees. (Def.'s 56.1 ¶¶ 13, 15.) Plaintiff bears the burden of showing that this reason is a pretext. To meet that burden, Plaintiff cites just one case, *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 348 (7th Cir. 1997), but offers no analysis other than to observe that "a pretext is a lie." (Pl's Response, at 2.)[8] In *Plair*, a Title VII race discrimination and wrongful termination case, the court found that the plaintiff had *failed* to show pretext for discrimination in the employer's decision to terminate. 105 F.3d at 350. Plaintiff fails to explain how the *Plair* reasoning supports his claim here.

Plaintiff does contend that Defendant's business was in fact active after September 11th, that people at the McCook terminal called him to tell him they were busy, and that Defendant was advertising for supervisors on the Internet. (Pl.'s 56.1 ¶¶ 13-14.) Plaintiff has offered no evidence to support this theory, however. He cites only to his own affidavit in his Local Rule 56.1 statement and supporting brief. (*Id.*; Pl.'s Response, at 2.) His own affidavit says nothing about Defendant being busy, calls from other employees, or the Internet. (Kocik Aff., Tab B to Pl.'s 56.1.) Even if it did, the court notes that in his deposition, Plaintiff admitted to having no personal knowledge of the state of Defendant's business during the layoff period because he was not at work (Kocik Dep., at 43:3-22), and the alleged phone calls from co-workers are inadmissible hearsay under FED. R. EVID. 802. Nor has Plaintiff submitted any proof of Defendant's alleged Internet advertising, such as a printout of a web page.

Defendant, on the other hand, supports its stated reason with several affidavits, including two from USF Holland's Director of Human Resources. The first explains that the reason for Plaintiff's layoff was the decline in business conditions. (VandeVusse Aff. ¶ 6, Ex. B to Def.'s 56.1.) The

---

[8] *Plair* is the only case cited in Pl.'s Response.

second affidavit lists fifteen other employees, aside from Plaintiff, who were laid off at the McCook terminal in September and October 2001. (VandeVusse Supplemental Aff. ¶ 6, App. to Defendant's Reply Brief Supporting its Motion for Summary Judgment.) In addition, Defendant submits the affidavit of Cassidy, the Terminal Manager, who states that business had declined after September 11th, that there was less work at McCook, that employees had to be laid off, and that Plaintiff was laid off as a result of a decision to lay off one of the three Operations Managers. (Cassidy Aff. ¶ 2-5, Ex. B to Def.'s 56.1.)

Absent any competent evidence that Defendant's articulated reason for sending the layoff notice was a pretext, Defendant's reason stands unrebutted. The court finds no disputes of material fact concerning Plaintiff's retaliatory discharge and grants summary judgment on that claim.

### III. Age Discrimination

Plaintiff's second count alleges that he was selected for layoff in violation of the ADEA. (Pl.'s 56.1 ¶ 24.) The ADEA prohibits an employer from "discharg[ing] any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a claim under the ADEA, a plaintiff-employee must show that age "actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)). Such a showing can be made either through direct evidence of the employer's discriminatory motive, or through the indirect, burden-shifting approach of *McDonnell Douglas*, 411 U.S. at 802. Plaintiff has submitted no direct evidence of any age-based discriminatory motive, so the court proceeds under the indirect, burden-shifting approach. *Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 573-74 (7th Cir. 2003).

In the context of a reduction in force, a plaintiff alleging age discrimination establishes a prima facie case if he demonstrates that he (1) is 40 or older; (2) was performing to the employer's legitimate expectations; (3) was subject to an adverse employment action; and, (4) similarly situated and substantially younger employees were treated more favorably. *Schuster*, 327 F.3d at 574. *See also Thorn v. Sundstrand Aero. Corp.*, 207 F.3d 383, 386 (7th Cir. 2000) (identifying, as the fourth element, a showing that a younger worker is now doing the work plaintiff had been performing). Where plaintiff has made a prima facie showing, defendant is called upon to articulate a legitimate, nondiscriminatory reason for the adverse action. If the defendant is able to present a legitimate, non-discriminatory basis for the termination, that plaintiff bears the burden of showing that the reason is but a pretext for discrimination. *Schuster*, 327 F.3d at 524.

Plaintiff's effort to establish a prima facie showing under this formulation falters on the fourth element. When determining whether a group of employees are "similarly situated," courts consider factors such as whether the employees held the same job responsibilities or were subordinate to the same supervisor. *Ajayi v. Aramark Business Services, Inc.*, 336 F.3d 520, 532 (7th Cir. 2003). Plaintiff is unable to establish that he was treated less favorably than younger, similarly situated employees, as he was younger than the other two Operations Managers, Byczek and Brosnan. (Pl.'s 56.1 ¶ 8, 10.) Plaintiff tries to overcome this hurdle in two ways. First, he claims he was not actually an Operations Manager, but merely a Supervisor, one of six. (Pl.'s 56.1 ¶ 23; Pl.'s Response, at 1-2.) According to his Local Rule 56.1 Statement, Plaintiff was the oldest Supervisor (Pl.'s 56.1 ¶ 23); in his supporting brief, he claims he was the fourth oldest of the six. (Pl.'s Response, at 1-2.) More damaging than this apparent contradiction, however, is the fact that he neglects to cite to the record

14

in support of either assertion, or offer any evidence of the ages of other USF Holland Supervisors for comparison.

Nor does the record support Plaintiff's insistence that he was not an Operations Manager. To the contrary, Plaintiff admitted several times in his deposition that he did hold that position. (Kocik Dep., at 16:17-19:14.) He further admitted that in January 1999, the time Defendant claims it promoted him to Operations Manager, he received a raise of $100 a week. (Kocik Dep., at 21:5.) Defendant has offered Plaintiff's "Employee Status Form," dated January 21, 1999, which states "promoted to Operations Manager 1-4-99." (Employee Status Form, Ex. 3 to Defendant's Reply Brief Supporting its Motion for Summary Judgment.) Finally, Plaintiff's Local Rule 56.1 statement contains the following admission: "Plaintiff admits Dennis Byzcek and Denis Brosnan were already Operations Managers at the time *he was promoted.*" (Pl.'s 56.1 ¶ 7) (emphasis added). On this record, Plaintiff has presented no basis to dispute Defendant's version; Plaintiff was an Operations Manager.

Plaintiff also argues that the positions of Supervisor and Operations Manager were identical, presumably to show that any evaluation of "similarly situated" employees should include Supervisors, in addition to Operations Managers. (Pl.'s 56.1 ¶ 4.) Here, finally, Plaintiff cites some evidence: his own affidavit, in which he asserts that the positions are identical, and that both Supervisors and Operations Managers report to the Terminal Manager. (Kocik Aff., Tab B to Pl.'s 56.1.) Aside from the confusion in Plaintiff's simultaneously arguing that he was not an Operations Manager, and that he was an Operations Manager but that it was no different from being a Supervisor, the court notes that Plaintiff contradicts these assertions in his affidavit with his deposition testimony. In his deposition, when asked what the "difference" was between the two positions, Plaintiff replied that

15

Operations Managers, unlike Supervisors, are in charge of the whole terminal when the Terminal Manager is absent. (Kocik Dep., at 18:15-20.) When asked whether it was "[f]air to say it's a different job than what the supervisor does," Plaintiff answered, "Yes, yes." (Kocik Dep., at 19:3-5.) He also admitted that when he was a Supervisor, he and other Supervisors reported to the Operations Manager, further contradicting his assertion in the affidavit that Supervisors and Operations Managers worked at the same level. (Kocik Dep., at 17:22-18:2.) As these admissions in his deposition testimony directly contradict his affidavit, the affidavit must be disregarded for purposes of summary judgment. *See Beckel v. Wal-Mart Assocs., Inc.*, 301 F.3d 621, 623 (7th Cir. 2002) (affidavits offered to contradict the affiants' deposition are "entitled to zero weight in summary judgment proceedings" unless the affiant explains the discrepancy in the affidavit itself).

Plaintiff thus fails to offer any evidentiary support for the proposition that the Supervisor and Operations Manager positions were identical. Absent such support, the group of "similarly situated" employees would include just the other Operations Managers, Byzcek and Brosnan, both of whom were older than Plaintiff. (Pl.'s 56.1 ¶¶ 8, 10.) As the youngest Operations Manager, Plaintiff is unable to show that younger employees were treated more favorably. Indeed, even if the position of Supervisor and that of Operations Manager were identical, as Plaintiff claims, and "similarly situated" employees included both positions, Plaintiff would not be the oldest in the group. The group would necessarily include Byzcek and Brosnan, both of whom were older than Plaintiff and not laid off.

Finally, the court notes that even if Plaintiff could establish a prima facie case, his claim would still fail. As discussed above, Defendant has articulated a legitimate, non-discriminatory reason for the layoff (the business downturn after September 11th). (Def.'s 56.1 ¶ 13.) Plaintiff has

not rebutted Defendant's showing that he was selected for layoff based on his seniority *vis-a-vis* the other Operations Managers. (*Cf.* Pl.'s 56.1 ¶¶ 18-23.) Indeed, it is undisputed that even since Plaintiff's recall from layoff to replace a retiree, Defendant has not filled the third Operations Manager position. (Def.'s 56.1, ¶ 22.)

## CONCLUSION

Defendant's motion for summary judgment (13-1) is granted.

ENTER:

Dated: February 22, 2005

REBECCA R. PALLMEYER
United States District Judge